## K. NAKAMOTO v. UNITED STATES

No. 5951.—Invoice dated Hiroshima, Japan, August 3, 1939.
Certified August 7, 1939.
Entered at Hilo, T. H., August 28, 1939.
Entry No. A–51.

### Third Division, Appellate Term

(Decided November 15, 1943)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellant.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellee.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This application for review involves a shipment of merchandise invoiced as "Hokkigai Boiled canned shell fish," imported from Japan. Three cases contained 8 dozen 4⅜-ounce tins and five cases contained 4 dozen 9-ounce tins. The merchandise was invoiced at the purchase price in Japanese yen, packing and inland freight included. It was entered under duress to meet advances of the appraiser in previous cases on the basis of the American selling price, and appraised as entered.

The correctness of the entered and appraised values is not raised. The only question presented is whether or not the American selling price is the proper basis of appraisement. Such issue becomes pertinent by reason of a proclamation by the President of the United States, as promulgated and published in T. D. 47031, issued under and by virtue of section 336 of the Tariff Act of 1930, after investiga-

tion by the Tariff Commission, to equalize the differences in the cost of production, decreeing that the assessment of duty at 35 per centum ad valorem under paragraph 721 (b) of the Tariff Act of 1930 on clams other than razor clams and clams in combination with other substances, (except clam chowder), packed in airtight containers, shall be taken upon the basis of the American selling price, as defined in section 402 (g) of said act.

The plaintiff before the trial court contended that the imported merchandise was not canned clams for tariff purposes and therefore should be appraised upon the basis of foreign, export, or United States value or at the cost of production thereof, rather than at the American selling price, and evidence was introduced in an effort to establish that the canned shellfish was not a clam.

Counsel for the Government objected to the introduction of any testimony affecting the classification of the merchandise as immaterial, as the only question before the court was one of value on reappraisement. The lower court overruled the objection of Government counsel upon authority of *United States* v. *Hauptmann*, 25 C. C. P. A. 323, T. D. 49423, and admitted such evidence.

The importer and the Government each examined two well-qualified witnesses, holding degrees in zoology and being well-known conchologists. Also certain exhibits were admitted in evidence. Plaintiff's exhibit 1 was offered and received in evidence as representative of the type of merchandise covered by the invoice, being later removed from the airtight container and placed in a glass jar, marked exhibit 1-A. Plaintiff's exhibit 2 consisted of a publication entitled "The Edible Bivalves of California" by Paul Bonnot. Plaintiff's exhibit 3 consisted of a book entitled "Fish and Game Code, 1939–1941" issued by the State of California, Department of Natural Resources, Division of Fish and Game. The Government introduced as an illustrative exhibit, marked "A," a photograph of the shell of the hokkigai that one of the Government witnesses had seen in Japan, and had photographed from an official publication of the Japanese Government entitled "Japanese Aquatic Plants and Animals."

The trial court held that the imported merchandise was intended to enter the commerce of the United States as a clam and consequently the American selling price was the proper basis to be used in determining the value for duty purposes. The court stated:

The scientific witnesses in this case agree that the word "clam" is not a scientific word and has no definite scientific meaning. The common meaning of the word "clam" is thus defined in Webster's New International Dictionary 2d. ed.:
*clam* 1. Any of various bivalve mollusks, esp. of certain edible kinds * * *.
The flexible tariff provisions, as used in this instance, are intended to meet and correct an adverse competitive condition.
It is very significant that the label of the imported merchandise advertises the goods as "Geisha Brand Hokki Clams," and in addition carries a picture that no

doubt, to the layman or shopping housewife, would appear to characterize 2 clam shells.

It is a well-established rule of construction that when Congress, in writing the tariff act, uses a word having a common meaning, without any further qualifications, that there is no need to go beyond such common meaning, unless such word is shown to have a different commercial meaning. This record contains no proof whatever as to commercial meaning.

The same rule would apply when the President of the United States uses a word quoted from and applied to the tariff act, such as the use of the word "clams" in T. D. 47031.

Whether or not the imported merchandise is a clam or a cockle, in the terminology of science, it is unnecessary for me to determine, for the reason that the word "clam" has a common meaning and that I am firmly convinced that the importation herein comes within the definition of such meaning, and also for the reason that when this merchandise was imported it was beyond a doubt intended that it enter the commerce of the United States as a clam.

The appellant contends in his brief that the lower court erred, setting out his contention in language following:

1. In concluding that it was unnecessary to determine whether or not the merchandise "is a  *  *  *  cockle, in the terminology of science" (assignment 5).  *  *  *.

2. In accepting as a definition of the common meaning the language quoted from Webster's New International Dictionary (assignment 3), when the quotation is incomplete and is inapplicable, because it embraces not only clams but also bivalve mollusks which are commonly known as cockles, oysters, scallops, etc.

3. In finding "that the importation herein comes within such meaning," in disregard of the fact that, even though the merchandise is an edible bivalve mollusk, it is not a clam if it is a *cardium* or cockle, nor is it a clam if it is *mactridae-sachalinensis* or hokkigai.

4. In finding that it was unnecessary to determine whether the merchandise "is a clam or cockle, in the terminology of science  *  *  * for the reason that when  *  *  * imported it was without doubt intended that it would enter the commerce of the United States as a clam." (assignment 6). By this finding the court again erroneously assumed that "clam" and "cockle" are scientific terms, and erroneously held that an assumed intention of an importer to sell an article as a "clam" is sufficient to establish its identity as such for tariff purposes.

The common meaning of the various terms used to describe and differentiate certain shellfish appears in the Century Dictionary and Cyclopedia as follows:

*mollusk, mollusc*  *  *  *.  A soft-bodied animal, usually with an external shell; a member of the *Mollusca* in any sense.  Vol. 5, page 3825.

*Mollusca*  *  *  *.  One of the leading divisions of invertebrated animals; an extensive series of invertebrates whose bodies are soft, without any jointed legs, and commonly covered with a hard shell in one, two, or more pieces, and whose principal parts are neither segmented into a series of longitudinal rings, as in insects, crustaceans, and worms, nor radiately arranged, as in echinoderms; the mollusks, as the univalve or bivalve shellfish of ordinary language.  *  *  *.

Vol. 5, page 3824.

*Cardium*  *  *  *.  The typical genus of the family *Cardiidae*, embracing the true cockles, of which the best-known species is the common edible one, *C. edule.*  *  *  *.  Vol. 1, page 821.

*cockle* \* \* \* a small kind of mussel or cockle, \* \* \*. A mollusk of the family *Cardiidae* and genus Cardium; especially, the common edible species of Europe, *Cardium edule;* \* \* \*. 2. An equivalve bivalve, resembling or related to mollusks of the genus *Cardium.*                                        Vol. 2, page 1079.

*clam (klam), n.* [Also formerly *clamp;* being a particular use (prob. through *clam-shell, clamp-shell,* that is, orig., a shell like a clamp or vise) \* .\* \* with ref. to the closed "jaws" of this shell-fish. Said by some to have ref. to "the firmness ,with which some clams adhere to rocks"; but clams do not adhere to rocks.] A name given in different localities to different bivalve mollusks.
                                                                Vol. 2, page 1024.

*Mactridae* \* \* \*. A family of siphonate bivalve mollusks, typified by the genus *Mactra;* the round-clams or trough-shells. The shell is equivalve, trigonal, and sinupallial, and has generally close-fitting valves. The hinge is characteristic, that of the left valve having a V-shaped cardinal tooth closing into two divergent branches of the right valve's cardinal tooth. The mantle is open in front, and the long united siphonal tubes are fringed with tentaculiform processes. The foot is linguiform. The *mactridae* are mostly marine shells of wide distribution. They are also called *Mactraeidae, Mactradae, Mactracea,* and *Mactrina.*                                             Vol. 5, page 3566.

*Mactra* \* \* \*. The typical genus of the family *Mactridae.* Upward of 100 species are described, of world-wide distribution. *M.* (or *Spisula) solidissima* is a large species with a thick heavy shell, five or six inches long, abundant along the Atlantic coast of the United States on sandy beaches. It is known as the *surf-clam, sea-clam,* and *hen-clam,* and is used for soups and chowders.
                                                                Vol. 5, page 3566.

Shellfish, except where *eo nomine* provided for, is entitled to free entry under the general provisions of paragraph 1761, consequently if it is proved that the importation is not clams it becomes immaterial what value applies thereto. The appellant here introduced evidence before the trial court to establish that the particular shellfish in question was not within the common understanding of clams. To that end, appellant's first witness testified that one of the classes of mollusks includes bivalves; that bivalves include oysters, clams, mussels, cockles, scallops, and thousands of other species, each class being broken down into many families, including over a hundred different classes of mussels, clams, and over 200 cockles; that all mollusks are known as clams where they are commercially profitable, particularly because there is no other word describing them that the general public understands (Record p. 19); that a clam, by the average person, is considered to be a bivalve mollusk, but that all bivalve mollusks are not considered clams (Record p. 26); that a vast majority of bivalves with movable feet are not clams; that the average man does not distinguish between a cockle and a clam; that he has seen cockles sold as clams (Record p. 21); that a cockle belongs to the cardiidae family, the typical genus being the cardium; that a cardium is distinguished from the clam or mussel by a movable foot and by being formed in the shape of a heart, the shape of the shell resulting in the body having a particular form; that there are cockles on the West Coast that scientifically are not cockles, and some commonly known as cockles

that are not cardium; that scientifically there is no such word as "clam"; that a clam "would be a cardium if it had a very sharply defined meaning which it doesn't have" (Record p. 18); that the average commercial man does not distinguish between a cockle and a clam (Record p. 21); that the difference between a cockle and a clam is only ascertainable by experts (Record p. 22); that if he were to sell exhibit 1, he would call it a clam (Record p. 23); that the word "cockle" is not, in his opinion, a scientific term; and that he had never heard of a cardium being called a clam, or a clam being called a cardium, but he had heard of a cockle being called a clam.

Upon examination of exhibit 1–A the witness was of the opinion that the article was a cardium or cockle, the witness stating that the cardium was commonly known as a cockle in the United States; that *he had never seen the particular specimen and did not know whether it belonged to the mactridae-sachalinensis class;* that he found a movable foot in exhibit 1–A, which was an essential of a clam; that *he would neither state that exhibit 1–A was a clam or that it was not a clam.*

Appellant's second witness testified that the word "clam" had no definite meaning; that all edible bivalve mollusks with equal shells are not clams, the word "clam" being a vernacular term varying in meaning in the different parts of the United States as applied to different bivalve mollusks; that he personally hardly ever used the word "clam" because it is difficult to tell what it implies; that a cardium is a bivalve mollusk having two equal shells somewhat heart shaped; that cardiums for some purposes are included within the common meaning of the word "clams" but normally that would not be his conception of a clam; that the term "clam" has a great many definitions; that so far as he knew clams do not include cockles; that he had never heard of the two terms being used together; that to his knowledge cardiums are not referred to as clams.

Upon being referred to the Fish and Game Code of the State of California, 1939–1941, exhibit 3, particularly to section 811 on page 137, relative to the laws governing cockles, the witness was asked if the species therein referred to by their scientific names were known in other parts of the United States by a common name different from "cockle," the witness answered—"The other name would be 'clam.' I think you will see that by looking at Paul Bonnot's article. The same species, 'chione' will be called there 'clams' in that book" (Record p. 4). Referring to an article by Paul Bonnot entitled "The Edible Bivalves of California," exhibit 2, the witness stated that it contained the common names for the edible clams on the West Coast; that on page 225 of said article, the species having a scientific name of "paphia staminae" was the rock cockle and that other names listed for the same were "Little neck clam, hard-shell, rock clam, cherry stone, sweet clam, ribbed carpet shell," and to

his own knowledge he knew of one restaurant in town that sold that particular species under the name of "coo-coo clam" (Record p. 40).

The Government's first witness testified that the "spisula" was a genus of the mactridae found on the California coast and is of the same family as the mactridae-sachalinensis; that all mollusks which he knows as clams have a very active foot; that cardiums have an active foot; that cardiums are clams and they are also known as cockles.

The Government's second witness, after examining exhibit 1–A thoroughly, testified that it was a clam which was scientifically known as the mactridae-sachalinensis; that his authority for applying the word "clam" to the mactridae-sachalinensis was the official Japanese publication as well as an examination of the animal itself which shows it is a clam; that he has been in Japan and has dug and eaten the particular clams in question; that the name mactridae-sachalinensis was applied to the species by the leading Japanese authorities; that he has independently identified the body of the hokki or hokkigai he saw in Japan as well as the shell as being that of the mactridae-sachalinensis; that in his opinion a cardium would also be a clam, and a cockle is known as a hard clam. When asked: "Is that mollusk you are now referring to as a hard clam a cardium?" the witness answered "yes" (Record page 80).

The picture, illustrative exhibit A, of the "Mactra sachalinensis" also marked "Hokki-gai" in our opinion, depicts the ordinary clam.

The evidence before the trial court clearly establishes that bivalve mollusks, scientifically known as cardiums, are commonly known as cockles and that both terms embrace species of the ordinary clams of commerce. Also, that the bivalve mollusk scientifically known as mactridae or mactra sachalinensis, and known in Japan as the hokki or hokki-gai, is a clam, and as such it is within the terms of the proclamation of the President, and properly appraised upon the basis of the American selling price, as defined in section 402 (g) of the Tariff Act of 1930.

From a consideration of the record before us, we find as facts that:

1. The imported merchandise, invoiced as "Hokkigai Boiled" canned shell fish, consists of clams.

2. By reason of the Proclamation of the President, T. D. 47031, the imported merchandise is subject to appraisement upon the basis of the American selling price.

3. The American selling price of the imported merchandise is the entered and appraised value thereof.

From such facts we conclude that there is no error in the judgment of the trial court holding that the value for duty purposes is the American selling price as returned by the appraiser.

Therefore judgment will be entered affirming the judgment of the trial court.